## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY HITTLE,<br><br>               Plaintiff,<br><br>   v.<br><br><br><br>SYKES ENTERPRISES, INC., MARK BOZEK, JAMES S. MACLEOD, CHUCK SYKES, WILLIAM D. MUIR JR., LORRAINE LEIGH LUTTON, VANESSA C.L. CHANG, CARLOS E. EVANS, W. MARK WATSON, and JEANNE BELIVEAU-DUNN,<br><br>              Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Mary Hittle ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Sykes Enterprises, Inc. ("Sykes Enterprises" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Sykes Enterprises and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Sykes Enterprises and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Sitel Group ("Parent") and its affiliates, whereby Florida Mergersub, Inc., a Florida Corporation wholly owned by Parent ("Merger Sub" and together with Parent "Sitel") will merge with and into Sykes with Sykes surviving the merger as a wholly-owned subsidiary of Sitel (the "Proposed Transaction").

2.      On June 17, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Sitel.  Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive: $54.00 in cash per share of Sykes Enterprises owned (the "Merger Consideration").

3.      On July 26, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Sykes Enterprises and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to

Sykes Enterprises shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Sykes Enterprises shares.

9.      Defendant Sykes Enterprises is incorporated under the laws of Florida and has its principal executive offices located at 400 North Ashley Drive, Tampa, FL, 33602.   The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "SYKE."

10.     Defendant Mark Bozek ("Bozek") is and has been a Sykes Enterprises director at all times during the relevant time period.

3

11.     Defendant James S. Macleod ("Macleod") is and has been the Non-Executive Chairman of the Board of Sykes Enterprises at all times during the relevant time period.

12.     Defendant Chuck Sykes ("Sykes") is and has been the President, Chief Executive Officer ("CEO") and director of Sykes Enterprises at all times during the relevant time period.

13.     Defendant William D. Muir, Jr. ("Muir") is and has been a Sykes Enterprises director at all times during the relevant time period.

14.     Defendant Lorraine Leigh Lutton ("Lutton") is and has been a Sykes Enterprises director at all times during the relevant time period.

15.     Defendant Vanessa C.L. Change ("Chang") is and has been a Sykes Enterprises director at all times during the relevant time period.

16.     Defendant Carlos E. Evans ("Evans") is and has been a Sykes Enterprises director at all times during the relevant time period.

17.     Defendant W. Mark Watson ("Watson") is and has been a Sykes Enterprises director at all times during the relevant time period.

18.     Defendant Jeanne Beliveau-Dunn ("Beliveau-Dunn") is and has been a Sykes Enterprises director at all times during the relevant time period.

19.     Defendants Bozek, Macleod, Sykes, Muir, Lutton, Chang, Evans, Watson and Beliveau-Dunn are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant Sykes Enterprises, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.    Sykes, and consolidated subsidiaries is a leading full lifecycle provider of global customer experience management services, multichannel demand generation and digital transformation. Sykes provides differentiated full lifecycle customer experience management solutions and services primarily to Global 2000 companies and their end customers principally in the financial services, technology, communications, transportation & leisure and healthcare industries. Sykes has developed an extensive global reach with customer experience management centers across six continents, including North America, South America, Europe, Asia, Australia and Africa.

### The Company Announces the Proposed Transaction

22.    On June 18, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> TAMPA, Fla., June 18, 2021 (GLOBE NEWSWIRE) -- Sykes Enterprises, Incorporated ("SYKES" or the "Company") (NASDAQ: SYKE), a leading full life cycle provider of global customer experience management services, multichannel demand generation and digital transformation, and Sitel Group®, a leading global provider of customer experience (CX) products and solutions, today announced they have entered into a definitive merger agreement in which Sitel Group, through a wholly owned subsidiary, will acquire all of SYKES' outstanding shares of common stock at a purchase price of $54 per share in a transaction valued at approximately $2.2 billion on a fully diluted basis. The purchase price represents a premium of 31.2% over SYKES' closing price on June 17, 2021, and a premium of 29.1% over the 30-day volume-weighted average price of SYKES' common stock.
>
> President and Chief Executive Officer of the Company Chuck Sykes stated, "This combination marks a major milestone in our 40-plus year operating history. Thanks to the hard work of our team members, this transaction validates the execution of our vision, strategy, our differentiated full lifecycle business model and promises immediate and certain value for our stockholders at an attractive premium. As we embark on the next phase of our journey, there is an opportunity

to take the business to historic heights with a proven partner with similar culture and values. In Sitel Group, I am confident that we have a valuable partner with a solid heritage of deep industry knowledge and experience, solid industry reputation, a shared vision and a people-first culture to better serve customers."

"The strategic rationale driving this combination is solid," said Laurent Uberti, President and Chief Executive Officer of Sitel Group. "By joining forces with such a healthy, profitable and financially solid U.S. brand that also has a stellar reputation, we will further enhance our global reach. With this combination, we will be a more competitive BPO player with a wide range of CX products and solutions, leveraging EXP+™, the Enterprise Experience Platform from Sitel Group, especially with the addition of SYKES' CX solutions in digital, social media and robotic process automation (RPA), through their suite of digital transformation capabilities such as Clearlink and Symphony. By combining the two companies, our expanded geographic footprint, multi-shore solutions and greater capacity to serve customers will make us better equipped to help our customers navigate the rapid changes within the sector together. We began this journey more than 25 years ago and our entrepreneurial mindset still guides us, along with our talented people around the world and our people-centric values. We are excited about our future and continuing our story with best-in-class CX delivery for our customers and a greater employee experience for our combined 155,000 people. We have tremendous respect for Chuck Sykes and the business he and his family have built and all they have accomplished."

The proposed transaction is not subject to a financing condition, is expected to be completed in the second half of 2021 and is subject to the approval of SYKES' shareholders and customary closing conditions, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and other regulatory clearances. Upon the closing of the transaction, which was approved unanimously by the Company's Board of Directors, SYKES will become a privately-held company and its shares will cease trading on Nasdaq.

"On behalf of the SYKES board of directors, this transaction delivers significant and immediate value to our shareholders. We followed a disciplined process in forming a special transaction committee of the Board of Directors, which was chaired by independent director Carlos Evans, to facilitate the Board of Directors' evaluation of strategic alternatives. After a thorough analysis, in concert with our advisors, the special transaction committee and the Company's Board of Directors determined that this transaction is in the best interests of SYKES and its shareholders," commented James S. MacLeod, SYKES' Chairman of the Board of Directors.

**Advisors**

Goldman Sachs & Co. LLC served as exclusive financial advisor and Shumaker,

Loop & Kendrick, LLP served as legal counsel to SYKES. The special transaction committee of the Board of Directors of SYKES was advised by Ballard Spahr LLP. Lazard Freres SAS served as financial advisor and Freshfields Bruckhaus Deringer US LLP served as legal counsel to Sitel Group. Committed debt financing has been provided by BNP Paribas to Sitel Group.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23.     On July 26, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

25.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.    In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.    Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBIT; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

29.    Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

30.     The Proxy Statement contains the financial analyses and opinion of Goldman
Sachs & Co., LLC ("Goldman Sachs") concerning the Proposed Transaction, but fails to provide
material information concerning such.

31.     With respect to Goldman & Sachs' *Illustrative Discounted Cash Flow Analysis*
for the Company, the Proxy Statement fails to disclose: (i) the Company's terminal values; (ii)
the inputs and assumptions underlying Goldman Sachs' use of multiples ranging from 7.0x to
9.0x; (iii) the inputs and assumptions underlying Goldman Sachs' use of the perpetuity growth
rates ranging from (0.2)% to 2.5%; (iv) the inputs and assumptions underlying Goldman Sachs'
use of the discount rates ranging from 8.0% to 9.0%; (v) net cash of Sykes Enterprises; and (vi)
the number of fully-diluted outstanding Company shares as of June 15, 2021.

32.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price
Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying
Goldman Sachs' use of the multiples ranging from 6.5x to 8.5x; (ii) the estimated net cash of the
Company as of December 31 for each of the fiscal years 2021 to 2023; (iii) the total number of
fully diluted shares of Company common stock; and (iv) the inputs and assumptions underlying
Goldman Sachs' use of the discount rate of 8.5%.

33.     With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the
Proxy Statement fails to disclose the closing dates of each of the transactions, as well as the total
value of each.

34.     When a banker's endorsement of the fairness of a transaction is touted to
shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and
range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover,

the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)**
**of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any

material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Sykes Enterprises within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sykes Enterprises, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence

and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

<strong>JURY DEMAND</strong>

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 6, 2021                                  Respectfully submitted,

                                                       By: */s/ Joshua M. Lifshitz*
                                                       Joshua M. Lifshitz
                                                       Email: jml@jlclasslaw.com
                                                       **LIFSHITZ LAW FIRM, P.C.**
                                                       1190 Broadway,
                                                       Hewlett, New York 11557

Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*